Robert S. Freund (SBN 287566)
ROBERT FREUND LAW
10866 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Telephone: (323) 553-3407
Email: robert@robertfreundlaw.com

Attorneys for Defendant,
TSC Acquisition Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TSC ACQUISITION CORP.,<br><br>Defendant. | CASE NO. 2:19-cv-03863 PA-SK<br><br>**DEFENDANT TSC ACQUISITION CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[Concurrently filed with Separate Statement of Genuine Issues; Evidentiary Objections; Declarations of David Wilder, Nathan Johnson, and Robert S. Freund]<br><br>DATE:   May 18, 2020<br>TIME:   1:30 p.m.<br>CTRM:   9A<br><br>Judge:   Hon. Percy Anderson<br><br>Action Filed:   May 3, 2019<br>Trial Date:   July 21, 2020 |

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ....................................................................................1

   A. The Policies ....................................................................................................1

   B. No TSC Employees Conducted Any "Retail" Business ...............................2

   C. Plaintiff's Audits Were Rife with Errors, and TSC Consistently Disputed Them ...4

       1. The Post-Audit Adjustments of the 2014 Policy Were Based on Bad Information and an Alleged "Meeting" That Never Happened ...4

       2. The Post-Audit Adjustements of the 2015 Policy Included an Experience Modification Based on Payouts that Never Happened and Reclassifications that Plainly do not Apply to TSC ...4

       3. TSC Has Always and Continues to Dispute the Audit Adjustments ...5

III. ARGUMENT .......................................................................................................6

   A. Disputed Issues of Material Fact Preclude Summary Judgment of Plaintiff's Breach of Contract Claim ...6

       1. The Evidence Shows that Plaintiff Breached the Policies, Not TSC ...6

       2. At a Minimum, There Are Disputed Issues of Material Fact Regarding Plaintiff's Damages Calculations ...4

   B. Disputed Issues of Material Fact Preclude Summary Judgment of Plaintiff's Account State Claim, Which Also Fails as a Matter of Law ...9

       1. California Law Bars Plaintiff's Account Stated Claim Because It Is Based on TSC's Alleged Breach of Express Contract ...9

i

DEFENDANT TSC ACQUISITION CORPORATION'S OPPOSITION TO MSJ

      2.    Even If Plaintiff's Account Stated Claim Were Not Based upon Breach of Express Contract, Disputed Material Facts Preclude Summary Judgment ................................................................................... 11

  C.  The Court Should Deny Plaintiff's Motion Because It Is Untimely ...................... 13

IV.  CONCLUSION ................................................................................................................ 13

ii

DEFENDANT TSC ACQUISITION CORPORATION'S OPPOSITION TO MSJ

# TABLE OF AUTHORITIES

**Federal Cases**

*Cobell v. Norton*, 213 F.R.D. 42, 42 (D.D.C. 2003) ..........................................................13

*Dependable Highway Express, Inc. v. Rim Logistincs, Ltd.*, No. CV184261SJOAGRX, 2019 WL 988680 (C.D. Cal. Jan. 28, 2019)..........................................................................6, 8

*Flip Flop Shops Franchise Co., LLC v. Neb*, No. CV 16-7259-JFW (Ex), 2016 WL 9275403 (C.D. Cal. Apr. 26, 2017) .............................................................................6

*Fudy Printing Co. v. Aliphcom, Inc.*, No. 17-CV-03863-JSC, 2019 WL 2180221 (N.D. Cal. Mar. 7, 2019) ....................................................................................................................10

*Hartford Underwriters Ins. Co. v. Jobber's Wholesale, Inc.*, No. CV147522JFWMRWX, 2015 WL 12765462 (C.D. Cal. July 13, 2015)...........................................................12

*Kinsale Ins. Co. v. Sky High Sports Concord LLC*, 254 Supp. 3d 1234 (E.D. Cal. 2017) ..9

*Kinstley v. City & Cnty. of S.F.*, C 07-2323-SBA, 2009 WL 1974607 (N.D. Cal. July 8, 2009) .....................................................................................................................13

*Martine E Ricci Iamino S.P.A.—Cosnortile Societe Agricola v. W. Fresh Mktg. Servs., Inc.*, 54 F. Supp. 3d 1094 (E.D. Cal. 2014) ...............................................................10, 11, 12

*Montoya v. Reliance Standard Life Ins. Co.*, No. 14-CV-02740-WHO, 2015 WL 884643 (N.D. Cal. Mar. 2, 2015).........................................................................................11

*National Ins. Co. of Hartford v. Expert Auto. Reconditioning, Inc.*, No. SACV 13-0873-DOC, 2013 WL 6190591, at *3 (C.D. Cal. Nov. 24, 2013) ("*Expert Auto*").....10, 11, 12

*Parducci v. Overland Solutions, Inc.*, No. 18-CV-07162-WHO, 2019 WL 6311384 (N.D. Cal. Nov. 25, 2019) ..............................................................................................7

*Prof'l Bus. Bank v. Fed. Deposit Ins. Corp.*, No. CV1004614GAFAGRX, 2011 WL 13109254 (C.D. Cal. Oct. 4, 2011) ..............................................................................9

*Summers v. Teichert & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997) .........................................6

*TVBI Co. v. Hong Thoa Thi Pham*, No. 17-CV-05858-SI, 2019 WL 1779975 (N.D. Cal. Apr. 23, 2019).........................................................................................................9

**State Cases**

*Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449 (2007) ................... 6

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342 (1992) ........... 7

*Carson v. Mercury Ins. Co.*, 210 Cal. App. 4th 409 (2012) .............................................. 8, 9

*Gardner v. Watson*, 170 Cal. 570 (1915) ................................................................. 10, 12

*Hansen v. Fresno Jersey Farm Dairy Co.*, 220 Cal. 402 (1934) ........................................ 12

*Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745 (1987) ........................................................ 12

*Moore v. Bartholomae Corp.*, 69 Cal. App. 2d 474 (1945) .............................................. 10

*Salimi v. State Comp. Ins. Fund*, 54 Cal. App. 4th 216, 222 (1997) ................................ 11

*Sec. Officers Serv., Inc. v. State Comp. Ins. Fund*, 17 Cal. App. 4th 887 (1997) ............... 8

*Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597 (1969) ................................................ 11

**Statutes**

47 U.S.C. § 214(e) ............................................................................................................ 3

47 U.S.C. § 254(e) ............................................................................................................ 3

California Civil Code § 1802.5 ......................................................................................... 3

California Public Utilities Code § 270(a)(3) .................................................................... 3

California Public Utilities Code § 871, *et seq.* ................................................................ 3

California Revenue and Taxation Code § 6006(a) ........................................................... 3

**Regulations**

47 C.F.R. § 54.501 ............................................................................................................ 3

47 C.F.R. § 54.403 ............................................................................................................ 3

DEFENDANT TSC ACQUISITION CORPORATION'S OPPOSITION TO MSJ

47 C.F.R. § 54.407(a) ................................................................................................................. 3

## I. INTRODUCTION

This case is not a simple matter of unpaid invoices, as Plaintiff Travelers Property Casualty Company of America ("Plaintiff") falsely contends. Instead, it is about Plaintiff's failure to perform policy audits in good faith, refusing to account for the unique nature of Defendant TSC Acquisition Corporation's ("TSC") business operations and how those operations fundamentally changed during policy periods, and artificially inflating TSC's premiums. Rather than take the time and effort to understand TSC's business and evaluate whether its employees were properly classified, Plaintiff blindly reclassified TSC's employees into the most expensive possible policy codes. For example, in 2015, TSC cut its workforce almost in half and completely exited all operations that could conceivably be considered "retail" under the law and Plaintiff's own classification scheme. Yet Plaintiff's audit of the 2015 Policy resulted in *increased* payroll exposure of more than $200,000 based on "retail" reclassifications and false "experience modifications" premised on nonexistent claim payouts.

Now, Plaintiff alleges that TSC breached the Policies by failing to accept Plaintiff's artificially inflated premium adjustments. But Plaintiff, not TSC, breached the Policies by conducting the audits in bad faith, resulting in unreasonable adjustments. As explained below, Plaintiff's motion for summary judgment or partial summary judgment on its contract and account stated claims should be denied because there are ample genuine disputed issues that must be reserved for trial.

## II. STATEMENT OF FACTS

### A. The Policies

TSC acquired two workers compensation insurance policies from Travelers to TSC: Policy No. HJUB-4F12803-3-14, effective December 31, 2014 to December 31, 2015 (the "2014 Policy"); and Policy No. HJUB-7114P39-6-15, effective December 31, 2015 to December 31, 2016 (the "2015 Policy"). (Statement of Genuine Issues ("SGI") 1, 2.)

The initial total premium due under the 2014 Policy was $70,116. (Dkt. No. 26-3 [Guantlett Decl.] at p. 15.) Plaintiff acknowledges that TSC paid *more* than the initial total premium under the 2014 Policy. (SGI 14 ["Travelers received a total of $87,839.74 towards the 2014 Policy premium …."].)

The initial total premium due under the 2015 Policy was $49,060. (Dkt. No. 26-3 [Guantlett Decl.] at p. 219.) Plaintiff admits that TSC paid the entire initial total premium under the 2015 Policy. (Mot. at 11, n. 5.)

The procedures for post-policy period audits are set out in the Policies themselves. (Dkt. No. 26-3 [Gauntlett Decl.] at pp. 14, 218 ["All required information is subject to verification and change by audit to be made annually."], 33, 237 ["Information developed by audit will be used to determine the final premium."].) The Policies further explain that each "final premium will be determined after [the] policy ends by using … *proper classifications and rates that lawfully apply to the business and work covered by [the] policy*." (emphasis added) (*Id.* at pp. 32, 236.)

Contrary to Plaintiff's claim that it paid "in excess of $5 million in benefits to TSC employees under the 2014 Policy alone" (Mot. at 5), Plaintiff actually paid out less than $150,000 across both the 2014 and 2015 Policies. (SGI 34.)

### B. No TSC Employees Conducted Any "Retail" Business

The nature of TSC's business dictates that its clerical workers could not be classified as "retail" or "outside sales" employees under the Policies. First and foremost, TSC is 100% state- and federally funded and does not sell any products or services at either the retail or wholesale level. (SGI 26.) Under TSC's LifeLine plan, available in all states where TSC has been designated as an eligible telecommunications carrier ("ETC"), LifeLine customers receive *free* monthly service, *free* airtime each month, and a *free* handset. (SGI 26.) All of TSC's income is derived from both state (California) and federal taxes, which are used to pay for the wireless minutes provided

through the LifeLine program. (SGI 26.)[1] *There is no retail transaction at any point in the LifeLine program and no sales of any services or hardware*. (SGI 26.) Further, the TSC LifeLine service is not a "prepaid" service. So, unlike prepaid services, LifeLine customers do not pay in advance for their monthly allotment (typically, 250 minutes per month) of LifeLine-supported service either. (SGI 27.) Simply put, TSC LifeLine customers never pay a penny for the entire monthly LifeLine benefit. As such, there is no collection of any amount from the customer, and no bill is rendered to the customer for LifeLine service. (SGI 26-27.)

California defines a "retail sale" as one inherently involving the transfer of goods and services from one person to another in exchange for remuneration. *See, e.g.*, Cal. Civ. Code §1802.5 (defining "sale" as the sale of goods or the furnishing of services by a retail seller to a retail buyer for payment); Cal. Rev. & Tax Code § 6006(a) (defining sale as any "transfer of title or possession, exchange, or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property *for a consideration*") (emphasis added).

Furthermore, the Workers' Compensation Insurance Rating Bureau of California ("WCIRB") employee classification code 8017 ("STORES—retail—N.O.C.") applies to "*retail stores engaged in the sale of items* not more specifically described by another store classification, including but not limited to appliances, artwork, baked goods, cellular telephones, …." (emphasis added). (SGI 28.)

As set forth above, because no "sale" takes place as per California law, any and all reclassifications from clerical to retail or outside sales in Plaintiff's audits of the Policies would be erroneous; those reclassifications would not be "proper" and would not "lawfully apply to the business and work covered by [the Policies]." (Dkt. No. 26-3 [Gauntlett Decl.] at pp. 32, 236.)

---

[1] *See also* 47 U.S.C. §§ 214(e), 254(e); 47 C.F.R. §§ 54.501, 54.403, 54.407(a) (setting out federal LifeLine tax subsidy); Cal. Pub. Util. Code §§ 270(a)(3), 871, *et seq.* (California LifeLine subsidy).

3

DEFENDANT TSC ACQUISITION CORPORATION'S OPPOSITION TO MSJ

**C.  Plaintiff's Audits Were Rife with Errors, and TSC Consistently Disputed Them**

1.  The Post-Audit Adjustments of the 2014 Policy Were Based on Bad Information and an Alleged "Meeting" That Never Happened

Plaintiff claims that its auditor, John Kalinowsky, visited Sage Telecom, Inc.'s ("Sage") office in Dallas, Texas on May 5, 2016 to meet with Sage's financial consultant, Christian Gonzales, to conduct a post-policy audit under the 2014 Policy. (SGI 6.)  First, Mr. Gonzales was on leave for bereavement from Sage at that time, so Mr. Kalinowsky could not have met with Mr. Gonzales. (SGI 29.)  Second, Sage was a wholly owned subsidiary of TSC and did not have any access, knowledge, or comprehension of the financials for TSC that would be needed for Plaintiff to properly conduct the 2014 Policy audit. (SGI 30.)  Plaintiff's contention that it used relevant financial data "obtained directly from TSC" (SGI 7-8) is false; whatever data Mr. Kalinowsky obtained from Sage in Dallas would not have reflected accurate or complete financial records of TSC. (SGI 31.)

Plaintiff's audit adjustments for 2014 were full of errors.  First, Plaintiff reclassified employees from clerical designations to retail or outside sales—despite the fact that TSC does not sell any products or services and does not conduct any sales transactions—and made addition erroneous reclassifications. (SGI 32.)  Second, the errors in Plaintiff's audit were evident because the premium inexplicably *increased* during a period when TSC had eliminated half of the workforce in Dallas. (SGI 33.)

2.  The Post-Audit Adjustments of the 2015 Policy Included an Experience Modification Based on Payouts That Never Happened and Reclassifications That Plainly Do Not Apply to TSC

Plaintiff claims that the increase in the 2015 Policy premium "was primarily due the increased risk in insuring TSC," because an "experience modifier" was calculated on Plaintiff paying "in excess of $5 million in workers' compensation benefits under the 2014 Policy." (SGI 5, 19-20.)  This is demonstrably false; Plaintiff's own loss-run

documents—which the California Insurance Code required Plaintiff to provide—show that the aggregate amount Plaintiff paid out on *both* policies totals just $148,122.76, *i.e.*, roughly $4.85 million *less* than was Plaintiff claims it paid out. (SGI 34.) To the extent Plaintiff based the 2015 Policy adjustments on the "$5 million" figure and corresponding experience modification, the adjustments are plainly erroneous. (SGI 34-35.)

Like the 2014 Policy audit before it, the 2015 Policy audit misclassified TSC employees as retail and outside sales, which cannot apply to TSC for the reasons discussed above. (SGI 32.) And executive salaries appeared to be added to the TSC books when they should have been capped or eliminated altogether. (SGI 32.)

### 3.  TSC Has Always and Continues to Dispute the Audit Adjustments

Plaintiff correctly acknowledges that TSC disputed the adjustments made in the 2014 Policy audit. (SGI 8.) On or about September 13, 2016, at the instruction of TSC's co-CEO, Nathan Johnson, former TSC General Counsel Nathaniel Law demanded that Plaintiff show its "homework" on the 2014 Policy audit numbers. (SGI 36-37.) Beginning then, and continuing today, TSC disputes those numbers. (SGI 36-37.) Plaintiff's allegation that TSC never objected to or further disputed the audited 2014 Policy premium after November 23, 2016 is another demonstrable falsehood. (SGI 11, 15.)

On October 24, 2017, TSC's interim-CFO, David Wilder, called Mr. Kalinowsky to inform him that TSC was disputing both the 2014 and 2015 Policy audits and demanded that Plaintiff review both audits. (SGI 36-37.) Mr. Kalinowski agreed to review the audit issues. (SGI 36-37.) Thereafter Mr. Wilder was repeatedly contacted by a debt collector working for Plaintiff, and Mr. Wilder repeatedly made it clear that TSC was disputing and would not pay the purported 2014 or 2015 Policy adjustments. (SGI 36-37.)

Close to a year later, Mr. Wilder received an e-mail from Plaintiff's agent, Kenalynn Merkel, requesting the status of both premium adjustments. On August 13, 2018, Mr. Wilder once again made clear, "We are disputing the audit." (SGI 36-37.)

Because of the ongoing disagreements with Plaintiff regarding the policies, and in the interest of working with Plaintiff to reach some reasonable resolution, TSC made some payment towards the alleged balance, as a gesture of good faith—not as any admission as to the accuracy of the audits. (SGI 38.)

## III. ARGUMENT

### A. Disputed Issues of Material Fact Preclude Summary Judgment of Plaintiff's Breach of Contract Claim

Plaintiff raises a number of arguments in purported support of summary judgment. Each of these arguments only serves to highlight the multitude of factual issues.

#### 1. The Evidence Shows That Plaintiff Breached the Policies, Not TSC

The Parties do not dispute that the Policies are valid contracts. Instead, Plaintiff's claim for breach fails on two fronts.[2] First, Plaintiff did not perform its audits in good faith, excusing any alleged breach or nonperformance by TSC on the grounds of Plaintiff's unclean hands. (Dkt. No. 14 [Answer] at 6:22-26). *See Dependable Highway Express, Inc. v. Rim Logistincs, Ltd.*, No. CV184261SJOAGRX, 2019 WL 988680, at *6 (C.D. Cal. Jan. 28, 2019) ("Here, the Court equates unclean hands to breach of the implied covenant of good faith and fair dealing."). Second, Plaintiff's demands for payment of the inflated premium adjustments contravene the plain language of the Policy.

"In every contract … there is an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Archdale v. Am. Int'l Specialty Lines Ins. Co.*, 154 Cal. App. 4th 449, 463 (2007). The covenant of good faith and fair dealing is often applied "in

---

[2] Plaintiff offers just two cases in support of its breach of contract argument. (Mot. at 16.) *Flip Flop Shops Franchise Co., LLC v. Neb*, No. CV 16-7259-JFW (Ex), 2016 WL 9275403 (C.D. Cal. Apr. 26, 2017) involved a preliminary injunction motion and does not contain the quote referenced in Plaintiff's Motion. *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) sets out of the general summary judgment standard in the context of an ADA discrimination case.

situations where one party is invested with a discretionary power affecting the right of another. Such power must be exercised in good faith." *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 371-72 (1992).

The Policies permitted Plaintiff to conduct audits and adjust premiums, which it was obligated to do in good faith. Plaintiff misclassified TSC's employees, resulting in higher adjusted premiums, when in reality, the premiums should not have increased at all. As Plaintiff acknowledges, if the audit adjustments resulted in a lower total premium, Plaintiff was obligated to refund the balance to TSC. (Mot. at 13:21-23; SGI 4.)

Plaintiff claims it reclassified TSC's employees into more expensive codes based on Plaintiff's "proprietary Manual of rules, rates, ratings, and classifications." (Mot. at 19; SGI 18.) But Plaintiff cannot offer any evidence justifying reclassifying TSC employees as "retail" workers when TSC has absolutely no retail operations whatsoever (SGI 26-28.) Plaintiff intentionally and artificially drove up the premiums in breach of its duty of good faith by reclassifying employees to codes bearing no relation to the work those employees actually performed and completely ignored the fundamentals of TSC's business model. As set forth in Section II above, TSC provides completely free services to all of its LifeLine customers, and none of its employees engage in any "retail" activity as that term is defined by California law, the WCIRB classification codes, or common sense. (SGI.) *See Parducci v. Overland Solutions, Inc.*, No. 18-CV-07162-WHO, 2019 WL 6311384, at *9 (N.D. Cal. Nov. 25, 2019) (ruling plaintiff stated claim against insurer for breach of implied covenant "because it was not calculating premiums in good faith" using "analysis that it knew or should have known was inaccurate, inflated or incorrect").

Plaintiff also argues that the "experience modifier," based on Plaintiff allegedly "paying in excess of $5 million in benefits to TSC employees under the 2014 Policy alone," was "[t]he main reason for the signification increase in premiums … between 2014 and 2015 …." (Mot. at 9:21-23; 11 n. 4.) But Plaintiff's own loss-run reports show that Plaintiff actually paid out *less than $150,000* during that period. (SGI 34.) Far from "self-serving opinions that Travelers' audit calculations are wrong" (Mot. at 16:20-21),

7

DEFENDANT TSC ACQUISITION CORPORATION'S OPPOSITION TO MSJ

Plaintiffs own documents prove that the calculations were wrong and that Plaintiff knew or should have known that they were wrong.

Compounding the breach of good faith, Plaintiff argues that TSC was required to immediately pay whatever premium adjustments Plaintiff made, regardless of whether those adjustments were accurate. (Mot. at 13:23-25.) Under Plaintiff's theory, it could have sent TSC adjustment notices for any amount whatsoever, and TSC would have been obligated to pay it upon receipt. Of course, that result is absurd, and it is refuted by the Policies. "Under the policy, [insured] did not agree to pay such premiums as [insurer] might discretionally charge. Rather, [insured] agreed to pay premiums fixed by law and regulations." *Sec. Officers Serv., Inc. v. State Comp. Ins. Fund*, 17 Cal. App. 4th 887, 896 (1997) (ruling insurer had good faith obligation to limit "financial burdens the insurer may cause [insured] by gratuitous or intentional discretionary conduct.").

Here, the Policies state that Plaintiff would determine final premiums owed based on "*proper classifications and rates that lawfully apply to the business and work covered by this policy*." (Dkt. No. 26-3 [Gauntlett Decl.] at pp. 32, 236.) Plaintiff breached the implied covenant of good faith by failing to conduct a diligent investigation during the audit process and artificially driving up premium costs by applying improper classifications and rates that did not lawfully apply to TSC. *See Officers Serv.*, 17 Cal. App. 4th at 896.

Finally, Plaintiff's contention that "TSC did not object to or dispute either of these findings" is flatly wrong. (Mot. at 14.) TSC objected to the audit adjustments for both Policies and has always disputed their validity. (SGI 36-37.)

A genuine dispute exists as to whether Plaintiff's premium adjustments were inflated and whether Plaintiff carried out the audits in good faith. If Plaintiff breached the implied covenant of good faith, then it breached the Policies, excusing TSC's performance. *See Dependable Highway*, 2019 WL 988680, at *10 (denying summary judgment on breach of contract where genuine issue existed as to whether moving party breached covenant of good faith and fair dealing); *Carson v. Mercury Ins. Co.*, 210 Cal.

App. 4th 409, 429 (2012) ("It is well established [that] a breach of the implied covenant of good faith is a breach of the contract, and that breach of a specific provision of the contract is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing."). Because determining whether TSC breached the Policies hinges on whether Plaintiff performed in good faith, there are genuine disputes regarding TSC's alleged breach and whether Plaintiff suffered damages.

### 2. At a Minimum, There Are Disputed Issues of Material Fact Regarding Plaintiff's Damages Calculations

Even if the Court determined that TSC breached the Policies and Plaintiff did not, the amount of damages owed is disputed and involves issues of fact reserved for trial. *See Prof'l Bus. Bank v. Fed. Deposit Ins. Corp.*, No. CV1004614GAFAGRX, 2011 WL 13109254, at *5 (C.D. Cal. Oct. 4, 2011) (ruling "factual disputes … preclude the Court from … calculating the damages owed to PBB" on breach of contract claim at summary judgment); *Kinsale Ins. Co. v. Sky High Sports Concord LLC*, 254 Supp. 3d 1234, 1240 (E.D. Cal. 2017) (granting summary judgment "with regard to Defendants' culpability" but noting "the Court is unable to provide a determination of the amount owed … and thus is unable to grant Plaintiff's Motion in its entirety."); *TVBI Co. v. Hong Thoa Thi Pham*, No. 17-CV-05858-SI, 2019 WL 1779975, at *4 (N.D. Cal. Apr. 23, 2019) (granting motion for partial summary judgment "with respect to liability on … breach of contract" and ruling "amount of damages … must be determined at trial").

## B. Disputed Issues of Material Fact Preclude Summary Judgment of Plaintiff's Account Stated Claim, Which Also Fails as a Matter of Law

### 1. California Law Bars Plaintiff's Account Stated Claim Because It Is Based on TSC's Alleged Breach of Express Contract

As a matter of established California law, Plaintiff cannot prevail on its claim for an account stated, because the claim is predicated on TSC's alleged breach of express contract, *i.e.*, the insurance Policies. "[U]nder California law, a debt which is predicated upon the breach of the terms of an express contract cannot be the basis of an account

9

DEFENDANT TSC ACQUISITION CORPORATION'S OPPOSITION TO MSJ

stated." *National Ins. Co. of Hartford v. Expert Auto. Reconditioning, Inc.*, No. SACV 13-0873-DOC, 2013 WL 6190591, at *3 (C.D. Cal. Nov. 24, 2013) ("*Expert Auto*") (emphasis added) (citing *Moore v. Bartholomae Corp.*, 69 Cal. App. 2d 474, 477-78 (1945)); *see Gardner v. Watson*, 170 Cal. 570, 574 (1915) ("The action upon an account stated is not upon the original dealings and transactions of the parties. Inquiry may not be he had into those matters at all. It is upon the new contract by and under which the parties have adjusted their differences and reached a new agreement.").

Because Plaintiff's claim for an account stated is based upon the terms of the parties' insurance contracts, which provided for the audits and subsequent disputed adjustments at issue here, Plaintiff's account stated claim fails. *See Expert Auto*, 2013 WL 6190591, at *3 ("Because the sum sought in the alleged account stated is based upon the terms of the insurance contract—'the original dealings and transactions of the parties'—Hartford's claim for an account stated fails.") (citing *Gardner*, 170 Cal. at 574); *see Fudy Printing Co. v. Aliphcom, Inc.*, No. 17-CV-03863-JSC, 2019 WL 2180221, at *4 (N.D. Cal. Mar. 7, 2019), report and recommendation adopted, No. 17-CV-03863-VC, 2019 WL 2180213 (N.D. Cal. Apr. 3, 2019) ("Plaintiff's account stated claim is based on the breach of the express contract and as such cannot be maintained as a separate claim.").

In *Express Auto*, the plaintiff insurance company brought a claim for an account stated based on unpaid premium adjustments following an audit under the insured's policy. The court ruled that the post-audit premium adjustments did not constitute a new agreement between the parties, noting that "the insurance contract states: 'After your audit, an adjustment will be made to the premium that was estimated when your policy was issued.'" 2013 WL 6190591, at *3. The account stated claim failed as a matter of law because "the audit did not create a new contract; the original contract provided for the audit and subsequent adjustment." *Id.*; *see Martine E Ricci Iamino S.P.A.— Cosnortile Societe Agricola v. W. Fresh Mktg. Servs., Inc.*, 54 F. Supp. 3d 1094, 1107-08

1 (E.D. Cal. 2014) ("Without a new and separate agreement regarding the amount owed, there is not an account stated.").

Here, as in *Express Auto*, the Policies provided for the audits and subsequent adjustments at issue in this litigation. (SGI 1-4.) Therefore, Plaintiff's damages sought under the account stated claim are predicated upon the terms of the Policies, and the account stated claim fails.

### 2. Even If Plaintiff's Account Stated Claim Were Not Based upon Breach of Express Contract, Disputed Material Facts Preclude Summary Judgment

Plaintiff argues that TSC "impliedly agreed on the amounts due to Travelers resulting from audits" because after receiving notification of audit adjustments, TSC "did not contemporaneously or reasonably thereafter, object to or dispute the amounts or charges contained therein." (Mot. at 18.)[3] Plaintiff is wrong.

To establish an account stated claim, a plaintiff must show: "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; (3) a promise by the debtor, express or implied, to pay the amount due." *Zinn v. Fred R. Bright Co.*, 271 Cal. App. 2d 597, 600 (1969).

First, Plaintiff cannot show that the parties reached a new agreement "on the amount due from the debtor to the creditor" or that there was "a promise by the debtor … to pay the amount due." *Zinn*, 271 Cal. App. 2d at 665; *see Martine E Ricci Iamino*

---

[3] Plaintiff's attempts to use TSC's election not to use "Travelers' internal dispute process" or "statute-authorized workers compensation insurance oversight agencies … remedies for aggrieved insureds" as evidence that TSC impliedly agreed to pay the premium adjustments are unavailing. (Mot. at 14-15 & n. 7.) Those avenues of dispute resolution are not mandatory or exclusive. (Dkt. No. 26-3 [Gauntlett Decl.] at pp. 75, 279 ("You *may* dispute our actions or the actions of the WCIRB pursuant to CIC Section 11737 and 11753.1.") (emphasis added).) *See Montoya v. Reliance Standard Life Ins. Co.*, No. 14-CV-02740-WHO, 2015 WL 884643, at *3 (N.D. Cal. Mar. 2, 2015) (ruling that exhaustion of remedies provided in insurance policy was not required before filing suit); *Salimi v. State Comp. Ins. Fund*, 54 Cal. App. 4th 216, 222 (1997) ("[T]he WCAB was not created to adjudicate claims of bad faith and breach of contract ….").

*S.P.A.—Cosnortile Societe Agricola*, 54 F. Supp. 3d at 1107-08 ("Without a new and separate agreement regarding the amount owed, there is not an account stated."). In the insurance context, an additional premium is not a separate statement of account that constitutes a new contract. Instead, it is part of the original policy. *See Expert Auto*, 2013 WL 6190591, at *3 ("Because the sum sought in the alleged account stated is based on upon the terms of the insurance contract—'the original dealings and transactions of the parties'—Hartford's claim for an account stated fails.") (citing *Gardner*, 170 Cal. at 574).

Moreover, the Complaint indicates that there was *not* a separate contract for the disputed amount owed. Plaintiff alleges that the amount owed under the supposed "account" is identical to the amount alleged in the breach of contract claim. (*See* Complt. ¶¶ 24 [demanding $280,438.26 for breach of contract], ¶ 28 [demanding same for account stated].) And Plaintiff alleges that TSC has always refused to pay the amount owed. (*See* Complt. ¶ 23 ["TSC has failed, refused and continues to refuse to pay the balance due and owing to Travelers."].)

Second, as discussed above, TSC has always disputed the adjusted charges for both the 2014 and 2015 audits. (SGI 36-37.) Plaintiff's reliance on *Hartford Underwriters Ins. Co. v. Jobber's Wholesale, Inc.*, No. CV147522JFWMRWX, 2015 WL 12765462, at *4 (C.D. Cal. July 13, 2015) is misplaced. There, the defendant "admit[ted] that it owed Hartford the Additional Audited Premiums" and "admit[ted] that, prior to filing its Answer, it did not dispute the Additional Audited Premiums demanded by Hartford …."). Here TSC never admitted that it owed the additional premiums under either the 2014 or 2015 Policy. (SGI 36-38.)[4]

---

[4] Plaintiff's additional cited authorities are also inapposite. *See Hansen v. Fresno Jersey Farm Dairy Co.*, 220 Cal. 402, 406 (1934) (holding that because alleged debtor "protested the reduction made by the defendant as arbitrary and not in accordance with the terms of the contract," trial court did not err in determining "that no account was ever stated …."); *Maggio, Inc. v. Neal*, 196 Cal. App. 3d 745, 753 (1987) (holding no account stated where there was "insufficient evidence to establish an agreement on the balance due" regarding employee's repayment of cash advances).

### C. The Court Should Deny Plaintiff's Motion Because It Is Untimely

A court may trike a filing that violates the Rule 16 scheduling order or local rule. *See Kinstley v. City & Cnty. of S.F.*, C 07-2323-SBA, 2009 WL 1974607, at *1 (N.D. Cal. July 8, 2009) ("Plaintiff's untimely submission violates Local Rule 7-3, and Defendant's motion to strike the 'Objection' as untimely is well-taken."); *Cobell v. Norton*, 213 F.R.D. 42, 42 (D.D.C. 2003) (granting motion to strike untimely filing because "it is only fair to require all parties to the present case to comply with the Federal Rules of Civil Procedure and Local Rules.").

This Court's Rule 16(b) Scheduling Order could not have been more clear: "In virtually every case, the Court expects that the moving party will provide more than the minimum twenty-eight (28) day notice for [summary judgment motions]." (Dkt. No 20, at p. 5, ¶ II.A.1.) Plaintiff filed its Motion for Summary Judgment (a filing comprising more than 450 pages) in the evening of April 20, the last possible day, leaving TSC just seven days to Oppose. There is no good cause for Plaintiff's flouting of the Court's Scheduling Order. The Motion should be denied for this reason alone.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff cannot maintain a claim for breach of contract or for an accounting, and TSC respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment or Partial Summary Judgment.

DATED: April 27, 2020                 ROBERT FREUND LAW

                                       By  */s/ Robert S. Freund*
                                           Robert S. Freund
                                           Attorneys for Defendant
                                           TSC ACQUISITION CORPORATION

DEFENDANT TSC ACQUISITION CORPORATION'S OPPOSITION TO MSJ