Robert S. Freund (SBN 287566)
ROBERT FREUND LAW
10866 Wilshire Boulevard, Suite 400
Los Angeles, CA 90024
Telephone: (323) 553-3407
Email: robert@robertfreundlaw.com

Attorneys for Defendant,
TSC Acquisition Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TSC ACQUISITION CORP.,<br><br>Defendant. | CASE NO.  2:19-cv-03863 PA-SK<br><br>**DECLARATION OF DAVID WILDER IN SUPPORT OF DEFENDANT TSC ACQUISITION CORPORATION'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>DATE:        May 18, 2020<br>TIME:        1:30 p.m.<br>CTRM:        9A<br><br>[Concurrently filed with Opposition; Separate Statement of Genuine Issues; Evidentiary Objections; Declarations of Nathan Johnson and Robert S. Freund]<br><br>Judge:        Hon. Percy Anderson<br><br>Action Filed:        May 3, 2019<br>Trial Date:        July 21, 2020 |

WILDER DECLARATION IN SUPPORT OF TSC'S OPPOSITION TO MSJ

## **DECLARATION OF DAVID WILDER**

I, David Wilder, declare under penalty of perjury under the laws of the United States and the State of California as follows:

1.      I served as the interim-Chief Financial Officer for TSC Acquisition Corp ("TSC") from June 2017 to April 2019 and was authorized to act on its behalf and on behalf of its subsidiaries. I am familiar with and had access to the workers compensation insurance policies issued to TSC Acquisitions Corp. ("TSC") in 2014 and 2015, the terms and conditions contained therein, and claims filed thereunder.

2.      As the interim CFO, and specifically, I was charged by co-CEO Nathan Johnson with financial modeling, analysis and other tasks such as procurement, implementation, and management of insurance policies managing TSC's various insurance policies, including, without limitation, the 2014 and 2015 Travelers policies. I am familiar with the payment provisions of the subject Travelers policies, having been intimately familiar with the same after handling both audit procedures starting in 2017. Further, I was the point person at all relevant times with the TSC insurance broker who would send me all loss-runs from insurance companies, among other relevant information.  As such, I attest to and have personal knowledge of the facts and circumstances set forth below.

3.      In October of 2017, I was charged by Mr. Johnson to manage the issues regarding Policy No. HJUB-4F12803-3-14, with effective dates of December 31, 2014 to December 31, 2015 (the "2014 Policy"), and policy No. HJUB-7114P39-6-15, with effective dates of December 31, 2015 to December 31, 2016 (the "2015 Policy") (together, the "Policies"). As such, I researched the file and discussed the matter with fellow executives, specifically, Mr. Johnson.  I also reviewed the financial records of TSC to confirm that TSC was up to date on all payments under the original Policy premiums and remained so until I left the company.

4.      With respect to the 2014 Policy, I learned from my diligence that Travelers was seeking to collect an additional premium amount of $53,253.26, which was the

1

revised audited figure, for alleged increases in payroll data and risk ratings (the "2014 Premium Adjustment").

5. With respect to the 2015 Policy, I also discovered from my investigation that Travelers was assessing an additional premium amount of $237,230.00 for alleged increases in risk ratings.

6. After my investigation was completed in part, I then reached out to TSC's insurance brokers to discuss my issues and concerns regarding inaccuracies in the Travelers policy audits. Specifically, I was concerned that Travelers had incorrectly applied risk ratings, in addition to improperly classifying TSC employees based on incorrect documentation and information, provided by a related TSC subsidiary in Dallas, Texas. A true and accurate copy of the October 10, 2017 email correspondence between myself and TSC's insurance brokers, Woodruff-Sawyer & Co., detailing my concerns is attached hereto as **Exhibit A.**

7. Also during my due diligence, I noticed in the file that Mr. John Kalinowsky of Travelers was in charge of the 2015 audit.  Apparently, on May 10, 2016, Mr. Kalinowsky emailed Christian Gonzales, the former controller for Sage Telecom in Dallas, Texas, about working with him on the 2015 Policy audit and requesting information regarding the same. That email festered for that time because Mr. Gonzales was terminated soon thereafter, along with the remainder of the Sage Telecom office. On or about the end of October 20, 2017, the email request eventually routed its way to me after another employee reviewed Mr. Gonzales's old emails. A true and correct copy of the May 10, 2016 email forwarded to me is attached hereto as **Exhibit B.**

8. The fact the audit apparently focused on the Sage Telecom office and executives, who had no historical or then-current visibility on TSC's financials, concerned me tremendously.  TSC had already sued all of the former executives of Sage Telecom for, among other things, fraud and gross mismanagement of TSC assets such as Sage Telecom. Therefore, learning that financial information and payroll records

WILDER DECLARATION IN SUPPORT OF TSC'S OPPOSITION TO MSJ

1  were sent to Mr. Kalinowsky by Sage executives raised a huge red flag for me about the
2  veracity of the 2014 Policy audit, as well as any resulting 2015 Policy audit, to the
3  extent any of the 2014 Policy information was used in the latter (such as experience
4  modifications, more on that below, *infra* ¶¶ 15-18).

5        9.    As such, on October 24th, 2017, I telephoned Mr. Kalinowsky of Travelers
6  to discuss his request and demand revised audits. On the call, I indicated that the policy
7  audits appeared to be incorrect based on, among other reasons, (1) improper
8  reclassifications of employees from clerical to sales, and (2) incorrect or incomplete
9  payroll records and "other financial information" provided to Travelers by executives of
10 Sage Telecom, Inc.—which, as discussed above, had no clarity on or access to its parent
11 company's aggregate financials and payroll. In other words, I was concerned that Sage
12 representatives provided Mr. Kalinowsky inflated or inaccurate payroll records during
13 the purported May 5, 2016 meeting in Dallas, Texas described in paragraph 4 of Mr.
14 Kalinowsky's declaration.

15       10.   On the call, I specifically informed Mr. Kalinowsky that TSC wanted
16 Travelers to participate in a review of both audits. Mr. Kalinowsky informed me that
17 Travelers considered the 2014 Policy premium audit closed and the 2015 Policy audit
18 pending. In response to Mr. Kalinowski, I made it clear that based on my review of the
19 classifications and payroll records, TSC didn't owe any money to Travelers based on
20 the 2014 Policy, and therefore it was TSC's position that the 2014 Policy remains in
21 dispute and not completed (hence my call). I also requested that the auditor be based in
22 California and to visit the TSC offices in person this time—not the Dallas, Texas office
23 of the defunct subsidiary Sage Telecom (like he did previously). Mr. Kalinowsky
24 balked at the necessity for an in-person meeting, and he suggested that transferring the
25 files would drag the matter out and probably be detrimental to TSC in the long haul
26 (*i.e.*, that Travelers could, in theory, adjust the sales employee reclassifications to a
27 more expensive classification, such as "telecom"). Mr. Kalinowsky eventually agreed
28 to review the audit and consider the payroll and classification issues that TSC had

3

(which are documented in the Declaration of Nathan Johnson, ¶ 17-18 filed concurrently herewith).

11.    Thereafter, I memorialized my conversation and emailed the other TSC executives, co-CEO's Nathan Johnson and Matthew Johnson and Chief Operating Officer Lucy Sung, summarizing my telephone conversation with Mr. Kalinowsky. Attached to hereto as **Exhibit C** is a true and accurate copy of the October 24, 2017 email.

12.    Despite Mr. Kalinowsky's assurances to me, Travelers instigated collection efforts and would not "call off the dogs."  As such, I was continually dealing with emails and phone calls from "The Receivable Management Services Corporation" to collect what Travelers characterized as an unpaid debt.  During each telephone call, I made it clear (1) that the audits were being reviewed once again, and (2) TSC had no intention of paying the purported 2014 Policy premium adjustments—or any subsequent audit on the 2015 Policy—until the classification and payroll issues were resolved directly with Travelers.

13.    The Declarations of Mr. Kalinowsky and Mr. Gauntlett (¶ 9 and ¶ 14, respectively) both state that TSC did not object or dispute the revised audited policy premium. As explained above, both statements are demonstrably false. I personally informed Mr. Kalinowsky of my objections during our October 24, 2017 telephone conference and continually stated the same to The Receivable Management Services Corporation, among others.  (See **Exhibit C**, supra).  It appeared to me then, and remains my impression, that the employees at Travelers were not discussing the issue among themselves because even after I objected to the 2015 Policy audit at every turn.

14.    To further illustrate this, almost a year later, on or about August 13, 2018, Travelers's agent, Ms. Kenalynn Merkel, emailed me requesting the status of the payment of the both premium adjustments (Travelers, as well as their collection agency, called me from time to time about the unpaid audit balances).  In the email, she stated: "I have reviewed the Audit Notes and do not see that it is being Disputed. Is the Audit

4

WILDER DECLARATION IN SUPPORT OF TSC'S OPPOSITION TO MSJ

correct?" Ms. Merkel then said, "If the Audit is not correct and you will be disputing it, it is important to get it into dispute as quickly as possible." I replied to Ms. Merkel stating, in no uncertain terms: "There is no payment status. We are disputing the audit. I will be reviewing the audit report with our brother this week. We are prepared to escalate our dispute to our corporate counsel." A true and accurate copy of this August 13, 2018 email exchange between Ms. Merkel and me is attached hereto as **Exhibit D**.

15.    As set forth in paragraph 2, *supra*, in my capacity as interim-CFO, I was the individual that interfaced with our insurance brokers at Woodruff-Sawyer during my tenure. Accordingly, and pursuant to Cal. Ins. Code § 679.7, I would request my agent at Woodruff-Sawyer make a written demand of Travelers for the latest "loss run." The loss-run is a document that records the history of claims made against a commercial insurance policy and are required to be provided to an insured upon written demand according to the above-referenced code section.

16.    Travelers's representatives swear under penalty of perjury that "Travelers paid in excess of $5 million in workers' compensation benefits under the 2014 Policy." (See SUF No. 5, Gauntlett Decl. ¶8; Soufi Decl., ¶¶ 6, 7). These sworn statements are false, according to Travelers's own loss-run records sent to me on January 20, 2018. Attached hereto as **Exhibit E** is a true and correct copy of Travelers's Loss Run as of January 20, 2018 that I received after written demand ("2018 Loss Run"). According to 2018 Loss Run, Travelers paid out a total of $135,596.98 (three total claims) on the 2014 Policy and $12,525.78 on the 2015 Policy (one total claim). Based on the loss-run data, the aggregate amount paid out on both policies amounts to $148,122.76, *i.e.*, $4,851,877.24 *less* than what Travelers claims was paid out.

18.    Travelers's Senior Premium Auditor, Nerissa Soufi, asserts in her declaration that as TSC employees "filed multiple claims under the 2014 Policy and received benefits totaling in excess of $5 million," using that "$5 million" figure as the reason why the "experience modifier used to calculate the 2015 Policy premium was significantly increased compared to 2014." (Soufi Decl., ¶ 7.) As stated above,

according to Travelers's own Loss Run, there were only three claims in 2014, totaling $135,596.98 in losses paid against that policy.  Therefore, if Travelers based the 2015 policy premium or any subsequent audit analysis on the inflated experience modification then, then those premiums and audit adjustments are erroneous.


          I declare under penalty of perjury of the laws of the United States and the State of California that the foregoing is true and correct.  Executed on this 27th day of April, 2020 at Los Angeles, California.


                              */s/ David Wilder*
                              David Wilder

WILDER DECLARATION IN SUPPORT OF TSC'S OPPOSITION TO MSJ

# EXHIBIT A

**From:** John Pierson <jpierson@wsandco.com>
**Sent:** Tuesday, October 10, 2017 9:56 AM
**To:** David Wilder <dwilder@truconnect.com>
**Cc:** Maheen Cook <mcook@truconnect.com>; Vikki Krapivkin <vkrapivikin@wsandco.com>; Yoko
Takenaka <ytakenaka@wsandco.com>; Matthew Johnson <mjohnson@truconnect.com>; Bryan Lojeski
<blojeski@wsandco.com>; Nathan Johnson <njohnson@truconnect.com>
**Subject:** RE: TSC Acquisition Corporation – Management Liability Policies Available on W-S Passport

Hi David:
Absolutely!
Do you have an opening at 1pm?   If so, what is the best number to reach you?
In the meantime, please forward what information you might have relative to the
15-16 audit.
Thanks,
John

**From:** David Wilder [mailto:dwilder@truconnect.com]
**Sent:** Tuesday, October 10, 2017 8:46 AM
**To:** John Pierson
**Cc:** Maheen Cook; Vikki Krapivkin; Yoko Takenaka; Matthew Johnson; Bryan Lojeski; Nathan Johnson
**Subject:** RE: TSC Acquisition Corporation – Management Liability Policies Available on W-S Passport

John can we schedule a call for today.  Need to discuss Annual Audit Request (2015-2016) from
Travelers.  Apparently they are trying to assess a significant amount ($30k) because we failed to
provide documents.  However they were sending document request to our old Dallas Office and
former HR people.  I think we need to make sure they get reoriented in terms of who and
where document request are sent. At a minimum they should have circulated our Broker.  After
this is corrected we can then straighten out the policy year 2015-2016 audit request.

**David E. Wilder**
Finance Dept., TruConnect
1149 S. Hill St., Suite H400
Los Angeles, CA 90015

**From:** Yoko Takenaka [mailto:ytakenaka@wsandco.com]
**Sent:** Tuesday, October 10, 2017 8:25 AM
**To:** David Wilder; Matthew Johnson; John Pierson; Bryan Lojeski
**Cc:** Maheen Cook; Vikki Krapivkin
**Subject:** RE: TSC Acquisition Corporation – Management Liability Policies Available on W-S Passport

Hi David,
Looks like our team handles your Workers Comp here at Woodruff.  John Pierson is the Account
Executive on your P&C lines (Commercial Package / Cargo / Workers Comp).  He is cc'd on this
email.  His # is 949-435-7368 if you need to contact him.

Yoko Takenaka
Woodruff-Sawyer & Co.
CorpEx Sr. Account Manager
949-435-7389
Please consider the environment before printing this e-mail.

**From:** David Wilder [mailto:dwilder@truconnect.com]
**Sent:** Tuesday, October 10, 2017 5:49 AM
**To:** Matthew Johnson; Vikki Krapivkin
**Cc:** Yoko Takenaka; Maheen Cook
**Subject:** RE: TSC Acquisition Corporation – Management Liability Policies Available on W-S Passport

I need to get in contact with the broker involved with the Workers Compensation policy. The carrier is Travelers.

Thank you

**David E. Wilder**
Finance Dept., TruConnect
1149 S. Hill St., Suite H400
Los Angeles, CA 90015

**From:** Matthew Johnson
**Sent:** Tuesday, October 10, 2017 5:34 AM
**To:** Vikki Krapivkin
**Cc:** Yoko Takenaka; Maheen Cook; David Wilder
**Subject:** RE: TSC Acquisition Corporation – Management Liability Policies Available on W-S Passport

Please note that Sola is no longer with us…please send this information to Maheen and David going forward. Thanks.

Matthew Johnson
TruConnect
1100 Glendon Ave, Suite 900
LA, CA 90024
(310) 696-4004
(310) 633-4409 (cell)



**From:** Vikki Krapivkin [mailto:vkrapivikin@wsandco.com]
**Sent:** Monday, October 09, 2017 2:12 PM
**To:** Matthew Johnson <mjohnson@truconnect.com>
**Cc:** Sola Lee <SLee@truconnect.com>; Yoko Takenaka <ytakenaka@wsandco.com>
**Subject:** TSC Acquisition Corporation – Management Liability Policies Available on W-S Passport

Dear Matthew,

We have recently posted the following documents
to *Passport* (https://passport.assurexglobal.com/client/):

File path: Briefcase | TSC Acquisition Corporation | 2017 – 2018 | Management Liability | Policies

- 17 AIG Management Liability Policy
- 17 Beazley $3M Cyber-E&O Policy

For your convenience, your *Passport* user information is below.  Due to a recent upgrade, you might need to sign in twice.

| Username: | solalee / mjohnson2 |
|-----------|---------------------|
| Password: | woodruff |

It is Woodruff-Sawyer's procedure to send policies electronically unless a hard copy is specifically requested.  Please let me know if you would like us to mail a hard copy of the policies.  For any future policy changes, an email will be sent to you when a document is available for viewing on *Passport*.

We urge you to always review each policy to be sure you understand the terms, conditions, limitations and exclusions[1][2].  As a reminder, higher limits of coverage are available.  Should you decide that higher limits are desired, please contact our office immediately.

On behalf of Woodruff-Sawyer & Co., thank you for the opportunity to place this coverage for TSC Acquisition Corporation. Should you have any questions or concerns regarding this, or any other part of your corporate insurance needs, please let us know.

Kind regards,
Vikki

**Vikki Krapivkin**
Account Coordinator
Corporate & Executive Protection
vkrapivkin@wsandco.com

o  949.435.7343
T  949.435.7340
F  949.476.3118

Woodruff-Sawyer & Co.
2 Park Plaza, Suite 500
Irvine, CA 92614

www.wsandco.com

    

This communication, including any attachments, is confidential and is protected by privilege. If you are not the intended recipient, any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone or email, and permanently delete all copies, electronic or other, you may have. The foregoing applies even if this notice is embedded in a message that is forwarded or attached. Please consider the environment before printing this email. An Assurex Global & IBN Partner. CA License 0329598

1.   *The above policy is a "claims made & reported" contract.  All claims must be reported in writing in the same policy period that the claim is received/known by the Insured.  Your insurance carrier may reject to provide coverage for a claim that is reported outside the policy period in which the claim was actually made.*

2.   *The policy provisions supersede all prior documents.*

# EXHIBIT B

**From:** Kalinowsky,John E [mailto:JKALINOW@travelers.com]
**Sent:** Tuesday, May 10, 2016 5:44 AM
**To:** Christian Gonzales <cgonzales@truconnect.com>
**Subject:** WC Audit

Hi Christian:

I've been through the information that you sent me and I took a first pass at classifying employees.  My classification worksheet is attached.  I've also provided inspection reports from the state of CA which assign the classifications applicable to your business.  Can you review these and let me know if any people have to be changed?

Class 7600 is for service technicians and employees working on any electronic equipment that is either in the field or in any office location in CA.
Class 8810 is for office staff.
Class 8017 is for staff working in cell phone / accessory stores (including cashiers, managers, assistant managers etc).

I assigned all TX staff to 8810 as I understood from our conversation that everybody worked in the office.  If there are any employees that travel frequently they would be subject to separate classification.  This would be people like outside sales staff who travel to visit clients.  I usually look for those employees who have expense accounts every month, a company car or a car allowance.

I also need to know if there are any contract workers or temp agencies used.  I need a general ledger or some other financial record that will show me that.  I know you indicated I needed to contact someone else about that.  Would you be able to forward this message for me?

Thanks!

**John E Kalinowsky | Senior Premium Auditor | Premium Audit**
Travelers
1301 E Collins Blvd
Richardson, Texas 75081
W: 469.401.4653   F: 877.844.5506



This communication, including attachments, is confidential, may be subject to legal privileges, and is intended for the sole use of the addressee. Any use, duplication, disclosure or dissemination of this communication, other than by the addressee, is prohibited. If you have received this communication in error, please notify the sender immediately and delete or destroy this communication and all copies.

# EXHIBIT C

**From:** David Wilder <dwilder@truconnect.com>
**Sent:** Tuesday, October 24, 2017 7:05 AM
**To:** Lucy Sung <LSung@truconnect.com>
**Cc:** Nathan Johnson <njohnson@truconnect.com>; Matthew Johnson <mjohnson@truconnect.com>
**Subject:** FW: WC Audit

I called John, Travelers Auditor, this AM.  Notes:

- There were two audits 14-15 and 15-16
- He considered 14-15 done and 15-16 is pending
- I told him that the 14-15 audit resulted in a bill for $60k, so we do not consider it done
- Regarding the 15-16 audit he was going to transfer the case to a new auditor in CA
  - He admitted that this would slow the process down
  - He asked if a face-to-face is necessary
  - I reminded him that this all comes down to payroll records and insurance class codes
  - He said he would take over the audit in order to get this done.
- He will call me on Wednesday to restart all the audits.

**David E. Wilder**
Finance Dept., TruConnect
1149 S. Hill St., Suite H400
Los Angeles, CA 90015

**From:** David Wilder
**Sent:** Monday, October 23, 2017 8:46 AM
**To:** 'JKALINOW@travelers.com'
**Cc:** Lucy Sung
**Subject:** FW: WC Audit

John can you call me to discuss the status.  213-634-0722

You should have been informed that Christian and Toni are no longer with the Company.  Although the COO, Lucy Sung, has taken over HR, much of your audit request will ultimately be channeled to our Finance Department.  I suggest you and I generate an audit list and get everything back on track.

Thank you

**David E. Wilder**
Finance Dept., TruConnect
1149 S. Hill St., Suite H400
Los Angeles, CA 90015

**From:** Toni Boone
**Sent:** Friday, October 20, 2017 11:31 AM

**To:** David Wilder
**Subject:** FW: WC Audit

FYI

---

**From:** Toni Boone
**Sent:** Monday, September 25, 2017 8:53 AM
**To:** 'JKALINOW@travelers.com' <JKALINOW@travelers.com>
**Subject:** FW: WC Audit

Hi John,

I received a notice in the mail stating we had a workers comp audit that was never compelted and payroll records were not sent over. In reviewing old files from Christian Gonzalez I found an old email with your information as the point of contact for the audit (please see below and attached). Would you be the person to speak with about the audit?

**From:** Toni Boone
**Sent:** Tuesday, September 12, 2017 12:42 PM
**To:** Toni Boone <tboone@truconnect.com>
**Subject:** FW: WC Audit

---

**From:** Kalinowsky,John E [mailto:JKALINOW@travelers.com]
**Sent:** Tuesday, May 10, 2016 5:44 AM
**To:** Christian Gonzales <cgonzales@truconnect.com>
**Subject:** WC Audit

Hi Christian:

I've been through the information that you sent me and I took a first pass at classifying employees.  My classification worksheet is attached.  I've also provided inspection reports from the state of CA which assign the classifications applicable to your business.  Can you review these and let me know if any people have to be changed?

Class 7600 is for service technicians and employees working on any electronic equipment that is either in the field or in any office location in CA.
Class 8810 is for office staff.
Class 8017 is for staff working in cell phone / accessory stores (including cashiers, managers, assistant managers etc).

I assigned all TX staff to 8810 as I understood from our conversation that everybody worked in the office.  If there are any employees that travel frequently they would be subject to separate classification.  This would be people like outside sales staff who travel to visit clients.  I usually look for those employees who have expense accounts every month, a company car or a car allowance.

I also need to know if there are any contract workers or temp agencies used.  I need a general ledger or some other financial record that will show me that.  I know you indicated I needed to contact someone else about that.  Would you be able to forward this message for me?

Thanks!

2

**John E Kalinowsky | Senior Premium Auditor | Premium Audit**
Travelers
1301 E Collins Blvd
Richardson, Texas 75081
W: 469.401.4653   F: 877.844.5506



This communication, including attachments, is confidential, may be subject to legal privileges, and is intended for the sole use of the addressee. Any use, duplication, disclosure or dissemination of this communication, other than by the addressee, is prohibited. If you have received this communication in error, please notify the sender immediately and delete or destroy this communication and all copies.

# EXHIBIT D

**From:** David Wilder <dwilder@truconnect.com>
**Subject: RE: Travelers Account 7023A7098 TSC ACQUISITION CORP**
**Date:** August 13, 2018 at 12:34:49 PM EDT
**To:** "'Merkel,Kenalynn M'" <KMERKEL@travelers.com>
**Cc:** "John Pierson (jpierson@woodruffsawyer.com)" <jpierson@woodruffsawyer.com>,
"Sammie Thean (sthean@wsandco.com)" <sthean@wsandco.com>

There is no payment status. We are disputing the audit. I will be reviewing the
audit report with our brother this week. We are prepared to escalate our dispute
to our corporate counsel.

## David E. Wilder

Finance Dept., TruConnect

1149 S. Hill St., Suite H400

Los Angeles, CA 90015

**From:** Merkel,Kenalynn M <KMERKEL@travelers.com>
**Sent:** Monday, August 13, 2018 9:29 AM
**To:** David Wilder <dwilder@truconnect.com>
**Subject:** Travelers Account 7023A7098 TSC ACQUISITION CORP
**Importance:** High
David,
Hello, this is courtesy email checking on payment status for the invoiced amount of $237,230.00, which
was due 8/3 and includes the 2015 Final Audit on the Workers Comp Policy 7114P396-UB,
I have reviewed the Audit Notes and do not see that it is being Disputed. Is the Audit correct?
If the payment is in the mail, thank you! Please provide the check number, the amount, the date sent
and to where, also if it was sent with the payment coupon.
If the Audit is not correct and you will be disputing it, it is important to get it into dispute as quickly as
possible as the 2nd invoice will issue on 08/14/18, and the next activity after that would be a Escalation
for Referral to Third Party Collections.
If it is being disputed, once it is in Re-write status then we can put that portion of the billing on hold to
allow time to resolve.
Thank you and have a great day.
**Kenalynn Merkel** | Account Service | Business Insurance Direct Bill Operations
Travelers
Spokane, Washington
W: 800-252-2268 Ext. 7507, F: 877-867-9495
**TRAVELERS**
Electronic payment options including Automatic Recurring Payments are available. Click here to enroll.
Thank you and have a great day.
**Kenalynn Merkel** | Account Service | Business Insurance Direct Bill Operations
Travelers
Spokane, Washington
W: 800-252-2268 Ext. 7507, F: 877-867-9495
**TRAVELERS**
Electronic payment options including Automatic Recurring Payments are available. Click here to enroll.

This message (including any attachments) may contain confidential, proprietary, privileged and/or private information. The information is
intended to be for the use of the individual or entity designated above. If you are not the intended recipient of this message, please notify the
sender immediately, and delete the message and any attachments. Any disclosure, reproduction, distribution or other use of this message or
any attachments by an individual or entity other than the intended recipient is prohibited.

# EXHIBIT E

**TSC ACQUISITION CORPORATION**
SAI Number(s): 7023A7098



## Detail Loss Report — Losses From: 01/01/2000 To 01/22/2018

| Claimant | Adj Off | FP | Claim Number | Accident Date | Notice Date | Close Date | O/C | | Total | Claim | Medical | Expense |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Policy Year: 2014** | | | | | | | | | | | | |
| **Claim Status: C** | | | | | | | | | | | | |
| AYALA    DALIA | 039 | CM | E5R2137 | 10/19/2015 | 10/20/2015 | 03/03/2016 | C | | | | | |
| IW EXITING ELEVATOR AT 7TH FLOOR LOBBY, WALKING TOWARDS DOOR IN HURRY WHEN FELL FORWARD LANDING ON KNEES AND WRISTS, RIGHT WRIST SORE | | | | | | | | Inc: | $981.00 | $0.00 | $683.00 | $298.00 |
| | | | | | | | | Pd: | $980.58 | $0.00 | $682.74 | $297.84 |
| | | | | | | | | O/S: | $0.00 | $0.00 | $0.00 | $0.00 |
| MORAN    LETICIA | 095 | CB | E1M1644 | 02/20/2015 | 02/22/2015 | 07/09/2015 | C | | | | | |
| EE REPORTED PAIN TO LEFT AND RIGHT HAND AND PAIN EXTENDED TO UPPER EXTREMITIES.  ONE ARM MORE THAN THE OTHER.  EE CLAIMS INJURY DUE TO REPETITIVE WORK. | | | | | | | | Inc: | $1,359.00 | $0.00 | $1,185.00 | $174.00 |
| | | | | | | | | Pd: | $1,359.40 | $0.00 | $1,184.93 | $174.47 |
| | | | | | | | | O/S: | $0.00 | $0.00 | $0.00 | $0.00 |
| **Claim Status: O** | | | | | | | | | | | | |
| HERNANDEZ   GABRIELA | 480 | CB | E1M3284 | 04/03/2015 | 04/06/2015 | | O | | | | | |
| EMPLOYEE WAS INVOLVED IN A CAR ACCIDENT DURING WORK HOURS.  EE DRIVING COMPANY CAR | | | | | | | | Inc: | $246,136.00 | $83,986.00 | $110,150.00 | $52,000.00 |
| | | | | | | | | Pd: | $133,256.98 | $53,522.96 | $43,334.79 | $36,399.23 |
| | | | | | | | | O/S: | $112,879.02 | $30,463.04 | $66,815.21 | $15,600.77 |
| **Subtotals for Policy Year : 2014** | | | | | | | | | | | | |
| **Total Claim Count: 3** | | | | | | | | Inc: | $248,476.00 | $83,986.00 | $112,018.00 | $52,472.00 |
| | | | | | | | | Pd: | $135,596.96 | $53,522.96 | $45,202.46 | $36,871.54 |
| | | | | | | | | O/S: | $112,879.04 | $30,463.04 | $66,815.54 | $15,600.46 |
| **Policy Year: 2015** | | | | | | | | | | | | |
| **Claim Status: O** | | | | | | | | | | | | |
| COUVERTIER   MARIA | 480 | CB | E7R4876 | 11/12/2016 | 11/29/2016 | | O | | | | | |
| POSSIBLY BODILY INJURY OVER TIME | | | | | | | | Inc: | $66,931.00 | $27,012.00 | $28,814.00 | $11,105.00 |
| | | | | | | | | Pd: | $12,525.78 | $3.00 | $8,134.38 | $4,388.40 |
| | | | | | | | | O/S: | $54,405.22 | $27,009.00 | $20,679.62 | $6,716.60 |
| **Subtotals for Policy Year : 2015** | | | | | | | | | | | | |
| **Total Claim Count: 1** | | | | | | | | Inc: | $66,931.00 | $27,012.00 | $28,814.00 | $11,105.00 |
| | | | | | | | | Pd: | $12,525.78 | $3.00 | $8,134.38 | $4,388.40 |
| | | | | | | | | O/S: | $54,405.22 | $27,009.00 | $20,679.62 | $6,716.60 |
| **Report Grand Totals** | | | | | | | | | | | | |
| **Total Claim Count: 4** | | | | | | | | Inc: | $315,407.00 | $110,998.00 | $140,832.00 | $63,577.00 |
| | | | | | | | | Pd: | $148,122.74 | $53,525.96 | $53,336.84 | $41,259.94 |
| | | | | | | | | O/S: | $167,284.26 | $57,472.04 | $87,495.16 | $22,317.06 |

**TSC ACQUISITION CORPORATION**
SAI Number(s): 7023A7098



| Detail Loss Report | Losses From: 01/01/2000 To 01/22/2018 |
|---|---|

| Report Parameters |
|---|

Report Name: Detail Loss
Losses From: 01/01/2000 To 01/22/2018                                             SAI Number(s): 7023A7098

| Sorts |
|---|

| Sort Name | Sort Label | Subtotal | Page Break |
|---|---|---|---|
| 1. Policy Year | Policy Year | Y | N |
| 2. Claim Status | Claim Status | N | N |

| Limiting Statements |
|---|

| Limit Name | Operator | Value(s) |
|---|---|---|
| Line of Insurance | Equal To | WC |

| Large Loss Limiting |
|---|

| Drill Down Limiting Criteria |
|---|