WESTON & McELVAIN LLP
Aaron C. Agness (State Bar No. 221943)
Joel A. Graboff (State Bar No. 316900)
1960 E. Grand Avenue, Suite 400
El Segundo, CA 90245
Telephone: (213) 596-8000
Facsimile: (213) 596-8039
E-mail: aagness@wmattorneys.com
       jgraboff@wmattorneys.com

Attorneys for Plaintiff
TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>TSC Acquisitions Corp.,<br><br>    Defendant. | CASE NO. 2:19-cv-03863-PA-SK<br><br>Assigned to the Honorable Percy Anderson, Ctrm. 9A<br><br>**PLAINTIFF TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Pretrial Conference<br><br>Date: June 17, 2020<br>Time: 3:00 p.m.<br>Ctrm: 9A<br><br>Action Filed: May 3, 2019<br>Trial Date: July 21, 2020 |

    Pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16-4 of the Rules of the Central District of California, Plaintiff Travelers Property Casualty Company of America ("Travelers") submits the following Memorandum of Contentions of Fact and Law.

---
1
TRAVELERS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## I. INTRODUCTION

Travelers issued two policies of workers compensation insurance to Defendant TSC Acquisitions Corp. ("TSC"). The first policy was effective December 31, 2014 to December 31, 2015 ("2014 Policy"), while the second policy was effective December 31, 2015 to December 31, 2016, ("2015 Policy") (collectively the "Policies"). The Policies are valid, binding, and enforceable contracts between the parties and covered not just TSC, but a number of TSC's subsidiaries and affiliates, including Telscape Communications Inc., Sage Telecom, and TruConnect Mobile.

Importantly, the initial premiums for the Policies were based on an estimate of TSC's gross payroll and employee classifications. The premiums were subject to change and verification by audit after the Policies expired. In this case, after providing coverage under the Policies for the duration of the contractual periods, Travelers audited the Policies. To do so, Travelers relied on TSC's actual gross payroll, obtained from TSC directly. Audits of the Policies resulted in a total of $280,483.26 in premiums being outstanding and due ($43,253.26 on the first policy and $237,230 on the second policy). Travelers repeatedly sought to collect the outstanding amounts from TSC, but TSC has failed to remit the debt owed, requiring Travelers to bring this suit.

TSC argues that Travelers' audits of the Policies relied on incomplete, erroneous data, and that by misclassifying employees, resulted in inflated premiums. As such, TSC claims that it has paid in full for the Policies, owing nothing further, or that it is excused from any further performance under the contracts.

TSC offers two primary arguments disputing Travelers' audit calculations: (1) that TSC employees classified as "retail" should have been classified as "clerical

TRAVELERS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

office employees"[1]; and (2) that Travelers miscalculated experience modifiers used in the final premium determinations.[2] As will be further explained herein, the "retail" classification of certain TSC employees is indisputable. This is true based both on TSC's own admissions, as well as the workers' compensation employee classification framework, as established by the Workers Compensation Insurance Rating Bureau ("WCIRB").[3] Furthermore, the experience modifiers used in connection with the audits were also calculated and provided by the WCIRB.[4] The actual reasons for the premium increases following the audits were related to one or more of the following factors: (1) the proper classification of certain employees as "retail"; (2) the actual, total amount of payroll exceeded initial estimates; and (3) the increased risk in insuring TSC based on its claim history.

By its refusal to pay the premiums owed, TSC breached the Policies with Travelers. TSC does not dispute the validity or enforceability of the terms of the Policies and has admitted that it has not remitted payment for the additional

---

[1] As non-customer facing employees, clerical office employees are cheaper to insure than retail employees, who are exposed to more hazards of the business.

[2] Experience modifiers account for an increased/decreased risk in insuring an entity.

[3] California Workers' Compensation Insurance Rating Laws, pursuant to California Insurance Code §11734, notice of which is included in the Policies, states: "A standard classification system, developed by the [WCIRB], is subject to approval by the insurance commissioner. The standard classification system is a method of recognizing and separating policyholders into industry or occupational groups according to their similarities and/or differences."

[4] California Workers' Compensation Insurance Rating Laws, pursuant to California Insurance Code §11734, notice of which is included in the Policies, states: "[Travelers] must adhere to a single, uniform experience rating plan. If [TSC is] eligible for experience rating under the plan, [Travelers is] required to adjust [the] premium to reflect [TSC's] claim history. A better claim history generally results in a lower experience rating modification; more claims, or more expensive claims, generally result in a higher experience rating modification. The uniform experience rating plan, which is developed by the [WCIRB], is subject to approval by the insurance commissioner."

premiums owed. TSC only disputes the amounts that are owed to Travelers based on a theory that Travelers' audits were not conducted in good faith. However, TSC's allegations are unsupported by any proven fact, testimony, or document produced in this litigation. Thus, there is no legitimate argument that TSC has not breached the Policies and harmed Travelers in the amount of the unpaid debt. Travelers' damages are therefore certain; Travelers is entitled to $280,483.26.[5]

## II.  CLAIMS AND DEFENSES

### A.  SUMMARY OF TRAVELERS' CLAIMS

Claim 1:    TSC breached the 2014 Policy.

Claim 2:    TSC breached the 2015 Policy.

### B.  ELEMENTS OF TRAVELERS' BREACH OF CONTRACT CLAIMS

In order to establish a breach of contract, Travelers must prove: (1) the existence of a contract; (2) Travelers' performance or excuse for nonperformance; (3) TSC's breach; and (4) damages to Travelers therefrom. Acoustics, Inc. v. Trepte Construction Co., Cal.App.3d 887, 913 (1971); see also Abdelhamid v. Fire Ins. Exchange, 182 Cal.App.4th 990, 999 (2010); California Civil Jury Instructions ("CACI") 300.

### C.  TRAVELERS' EVIDENCE IN SUPPORT OF ITS CLAIMS

Travelers intends to introduce the following evidence, to the extent not already stipulated, to support its contention that TSC breached the Policies:

- The Policies; specifically, language and provisions regarding initial premium estimates, post-policy audits, and the methodologies for calculating the same;

---

[5] In the event Travelers prevails, Travelers is also entitled to prejudgment interest under California Civil Code 3287, which will be determined by the Court following trial. Cal. Civ. Code 3287(a); Brocklesby v. United States, 767 F. 2d 1288 (9th Cir. 1985)(stating that prejudgment interest under Section 3287(a) is primarily a question of law);

- The basis for the estimated premiums in the Policies;
- Travelers' performance under the terms of the Policies;
- Travelers' audits of the Policies;
- Travelers' audit workbooks, including actual payroll used for the Policies' respective terms;
- Travelers' audit summaries;
- Travelers' premium audit adjustment notices;
- The California Workers' Compensation Uniform Statistical Reporting Plan-1995;
- WCIRB worksheets and reports related to experience modifiers and employee classifications;
- TSC's scope of business, including its employees' jobs reflecting that the proper classifications include retail;
- Communications from TSC confirming employees were properly classified as retail;
- TSC/TruConnect's website, including the business information pages, products for sale pages, media posts, and blog posts;
- Amounts paid by TSC towards the premiums owed;
- Communications between Travelers and TSC regarding the audits;
- Testimony from TSC Officers regarding the scope of TSC and its subsidiaries/affiliates that are covered under the Policies; and
- Testimony from Travelers' representatives regarding the Policies, the audits conducted, the basis for the audits, the results of the audits, and the amount of premium calculated to be owed.

D. **TSC'S DEFENSES**

It is clear that TSC will primarily argue that it owes nothing further under the Policies due to Travelers' audits not being performed in good faith, alleging that Travelers improperly classified certain employees as "retail." Instead, TSC claims

that all of its employees should have been classified as clerical office workers.  TSC makes this argument even though it has previously acknowledged that it operates retail stores, which were covered under the Policies, and even confirmed that certain positions at those locations were correctly categorized as "retail."[6]  Now, TSC has taken the position that no employee, regardless of their location or job duties, should be classified as "retail."

TSC claims that its entire operation involves providing free cellular phones, accessories, and services to low-income and eligible individuals under the government-sponsored LifeLine program.  TSC claims that it never transacts a single sale with its customers, nor ever collects a single penny in exchange for its goods and services.  However, Lifeline is not TSC's only business.  One of TSC's brands, TruConnect Mobile, a covered entity under the Policies, operates retail outlets in shopping centers, strip malls, and other physical locations, <u>selling</u> cellular phones, accessories, and calling plans in addition to servicing the LifeLine Program.  Even today, visiting www.truconnect.com provides substantial information about the additional <u>pay-for products and service</u> available from TruConnect, in addition to the many physical locations customers can visit to make said purchases.

TSC argues that employees at theses location are not truly "retail," rather, they are simply "clerical office employees," providing information about LifeLine, assisting customers sign up for free plans and devices, and perhaps selling an upgraded phone, accessory, or international calling plan on the side.  However, the classification framework for rating workers compensation insurance policies is very specific with regards to who is considered "retail" and who is considered a "clerical office employee."

Code 8017 sets out the requirements for classification as "retail:"

---

[6] Those positions were aptly titled, salesperson, cashier, store manager, and director of sales.

> This classification applies to **retail stores engaged in the sale of items** not more specifically described by another store classification, **including but not limited to** appliances, artwork, baked goods, **cellular telephones**, cosmetics or beauty supplies, prescription and non-prescription pharmaceuticals, party supplies, craft supplies, disposable medical supplies, mattresses and box springs, domestic pets, firearms, games or gaming devices, home electronics, musical instruments, sporting goods, toys, vitamins or food supplements, cut Christmas trees and wheelchairs.

On the other hand, the definition for "clerical office employee," code 8810, states:

> Clerical Office Employees are defined as those employees whose **duties are confined to keeping the books, records or cash of the employer; conducting correspondence; using computers; dispatching; recording weights; or who are engaged wholly in general office work or office drafting, having no regular duty of a non-clerical nature in the service of the employer**…the **entire payroll of any employee who is engaged in operations performed by Clerical Office Employees and also is exposed (1) to any operative hazard of the business or (2) to any outside selling or collecting work, shall be assigned to the highest rated classification of work to which the employee is so exposed**… Clerical Office Employees, shall be applied only to the payroll of persons herein described who **work exclusively in areas that are separated from all other work places of the employer by buildings, floors, partitions, railings or counters and within which no work is performed other than clerical office or drafting duties as defined in this Rule**.

Therefore, not only do employees working at TruConnect's three retail locations clearly and reasonably fall into the retail category based on the fact that they sell cellular phones at their stores, but the clerical office employee classification very clearly prohibits the inclusion of any employee who is exposed to any operative hazard of the business, or outside selling or collecting work. Further, clerical office employees must work in locations that are physically separated from all other work places of the employer. Even if TruConnect employees predominantly deal with LifeLine's free service option, that work is undeniably comingled with its retail operations, and thus the higher rated classification applies.[7]

---

[7] Per the WCIRB Code 8810 description above, it all comes down to exposure and risk. Even if only 10% of a job is consistent with traditional retail, the retail classification rightfully applies, as the exposure to retail hazards exist. Clerical office employees are cheaper to insure because they have no exposure whatsoever to

"Clerical office employees" is clearly not an appropriate category for employees at TruConnect's three self-proclaimed retail stores. Travelers' classification of TSC's TruConnect employees as "retail" is proper, as a matter of law.

Additionally Travelers believes TSC will argue that Travelers drove up the premium of the 2015 Policy by using an inflated experience modifier based on alleged payouts to TSC employees under the 2014 Policy of over $5M in benefits.[8] However, such a claim lacks any merit for two reasons, (1) the experience modifier used in the premium audit was not calculated by Travelers at all, but by the WCIRB; and 2) the experience modifier used as part of the 2015 premium audit did not even account for any claims filed under the 2014 Policy.[9]

Thus, it appears the only relevant affirmative defenses, while not meritorious, are the following:

### 1. Affirmative Defense – Full Payment

Travelers is informed and believes that TSC will argue that it has paid in full for premiums owed under the Policies, since it paid the initial premiums based on estimates of its payroll. In order to establish this, TSC must prove that audits of the Policies should have resulted in TSC not owing any further premiums.

---

any of the hazards of the business, i.e. physical labor, such as stocking and inventory, dealing in-person with the public and customers, etc.

[8] The reason for this new claim stems from an error in one of Travelers' audit workbooks, which led to a reporting error in Travelers' Motion for Summary Judgment. The MSJ stated that TSC employees had been paid out over $5M in benefits under the 2014 Policy. The actual pay-outs were in the hundreds of thousands. The error referenced in the MSJ had no relevance to the audits or the amounts owed, which will be shown at trial and for which TSC is already aware.

[9] The experience modifier is calculated based on the amount of claims filed, and pay-outs related thereto, made by TSC employees in the previous 4 years, excluding the most recent year. Therefore, for the 2015 Policy audit, the experience modifier would have been based on TSC's claim history from 2011-2013; excluding 2014.

### 2. Affirmative Defense – Unclean Hands

Travelers is informed and believes that TSC will argue that it is excused from any further performance under the contracts due to Travelers' audits of the Policies being conducted in bad faith. To prevail on a defense of unclean hands, TSC must demonstrate by *clear and convincing evidence* that, (1) "that the plaintiff's conduct is inequitable;" and (2) "that the conduct relates to the subject matter of [the plaintiff's] claims." Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (citing CIBA–GEIGY Corp. v. Bolar Pharm., 747 F.2d 844, 855 (3rd Cir.1984)); see also TrafficSchool.com, Inc. v. Edriver, Inc., 653 F.3d 820, 833 (9th Cir.2011) (holding that a defendant must demonstrate that an unclean hands defense applies with "clear, convincing evidence").

## III. ANTICIPATED EVIDENTIARY ISSUES AND ISSUES OF LAW

Travelers does not foresee any unusual evidentiary issues.

Travelers requests separate verdict forms relating to each policy because it is possible that the jury could find breach of only one of the two policies.

Travelers anticipates a dispute over the legal basis for some of TSC's proposed jury instructions and verdict forms. For instance, TSC sets forth a proposed jury instruction for bad faith, yet it is an instruction given if the plaintiff (i.e., Travelers) has a claim for bad faith, not the other way around. CACI No. 325. Moreover, any attempt to assert an affirmative claim for bad faith is both untimely and expressly prohibited by California law. TSC has not timely sought leave to file a counterclaim for bad faith and cannot attempt to do so by improperly including jury instructions for bad faith. And, in any event, the California Supreme Court has established that bad faith is not among the tort remedies available to insureds alleging overcharging of premiums following an audit. Jonathan Neil & Assoc., Inc. v. Jones, 33 Cal. 4th 917, 939 (2004).

Similarly, TSC is proposing a mitigation of damages instruction under the guise that Travelers is seeking prejudgment "interest", yet allowed prejudgment

interest to accumulate. TSC, however, is clearly trying to use the mitigation instruction to impact non-interest related damages. This is not a case where a mitigation of damages' instruction is warranted. If Travelers prevails at trial, it will be for the Court to determine the proper amount of prejudgment interest under California Civil Code 3287.

Finally, TSC appears to be trying to improperly shift the burden of proving unclean hands to Travelers, even though it is TSC's affirmative defense. Moreover, the defense of unclean hands requires a showing of clear and convincing evidence, a standard not reflected in TSC's proposed instructions.

### IV. **BIFURCATION OF ISSUES**

Travelers does not request bifurcation.

### V. **JURY TRIAL**

The case is scheduled for jury trial. Travelers' breach of contract claim is triable by jury.

### VI. **ATTORNEYS' FEES**

There is no basis for either party to claim attorneys' fees.

### VII. **ABANDONED ISSUES**

Travelers' claims for accounts stated and unjust enrichment were dismissed.

Dated: June 5, 2020                        WESTON & McELVAIN LLP

By: **/s/ Aaron C. Agness**
Aaron C. Agness
Joel A. Graboff
Attorneys for Plaintiff
TRAVELERS PROPERTY
CASUALTY COMPANY OF
AMERICA

*Travelers Property Casualty Company of America v. TSC Acquisition Corp.*
USDC-CACD, Case No. 2:19-cv-03863-PA-SK

# PROOF OF SERVICE

I, Felicia Ball, declare:

I am employed in the County of Los Angeles, state of California. I am over the age of 18 and not a party to the within action; my business address is 1960 East Grand Avenue, Suite 400, El Segundo, California 90245.

On June 5, 2020, I served a copy of the following document:

**PLAINTIFF TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**

By electronically filing the foregoing document with the Clerk of the United States District Court, Central District of California, using its ECF system, which electronically notifies the persons on the attached service list at the email addresses registered with the ECF System.

I declare under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 5, 2020 at Inglewood, California.

*Felicia Ball*
FELICIA BALL

# **SERVICE LIST**

Robert S. Freund
**ROBERT FREUND LAW**
10866 Wilshire Boulevard, Suite 400
Los Angeles, California 90024
Telephone: (323) 553-3407
Facsimile: *Unavailable*
E-mail: robert@robertfreundlaw.com

*Attorneys for Defendant,*
TSC Acquisition Corp.

Kevin J. Cole (SBN 321555)
**KJC LAW GROUP, A.P.C.**
6700 Fallbrook Avenue, Suite 207
West Hills, CA 91307
Telephone: (818) 392-8995
Email: kevin@kjclawgroup.com

*Attorneys for Defendant,*
TSC Acquisition Corp.